IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

TOWN OF THORNAPPLE, WISCONSIN, *et al.*,

Defendants-Appellants

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
Case No. 3:24-cv-00664
The Honorable Judge James D. Peterson

_____

BRIEF OF *AMICUS CURIAE* DISABILITY RIGHTS WISCONSIN
IN SUPPORT OF THE UNITED STATES AND AFFIRMANCE
OF THE DISTRICT COURT'S PRELIMINARY INJUNCTION

_____

Scott B. Thompson, SBN 1098161
Jeffrey A. Mandell, SBN 1100406
Law Forward
222 W. Washington St., Suite 250
Madison, WI 53703
(608) 285-2485
sthompson@lawforward.org
jmandell@lawforward.org

*Counsel for Disability Rights Wisconsin*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2931

Short Caption: United States of America v. Town of Thornapple, Wisconsin, et al.

　To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

　The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Amicus Curiae, Disability Rights Wisconsin

(2)　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Law Forward, Inc.

(3)　If the party, amicus or intervenor is a corporation:

　i)　　Identify all its parent corporations, if any; and

　　 n/a

　ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

　　 n/a

(4)　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

　 n/a

(5)　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

　 n/a

---

Attorney's Signature: s/Jeffrey A. Mandell　　　　Date: 2.13.25

Attorney's Printed Name:  Jeffrey A. Mandell

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　**Yes** ☑　**No** ☐

Address:  222 W Washington Ave. Ste 250

　 Madison, WI 53703

Phone Number:  (608) 285-2485　　　　Fax Number:  n/a

E-Mail Address:  jmandell@lawforward.org

rev. 12/19 AK

| Save As | Clear Form |

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-2931

Short Caption: United States of America v. Town of Thornapple, Wisconsin, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Amicus Curiae, Disability Rights Wisconsin

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Law Forward, Inc.

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

    n/a

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    n/a

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    n/a

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    n/a

Attorney's Signature: s/Scott B. Thompson     Date: 2.13.25

Attorney's Printed Name: Scott B. Thompson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address: 222 W. Washington Ave. Ste 250

Madison, WI 53703

Phone Number: (414) 241-3827     Fax Number: n/a

E-Mail Address: sthompson@lawforward.org

# TABLE OF CONTENTS

STATEMENT OF INTEREST ................................................................. 1

ARGUMENT ...................................................................................... 4

    Voters with disabilities enjoy the right to a secret ballot
under the Wisconsin Constitution. Forcing these voters to
forego this right constitutes irreparable harm. ................................ 4

CONCLUSION .................................................................................... 9

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ....11

FEDERAL RULE OF APPELLATE PROCEDURE 29(A)(4)(E)
STATEMENT .......................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Burson v. Freeman,*
  504 U.S. 191 (1992) .................................................................. 5

*Campaign for Fam. Farms v. Glickman,*
  200 F.3d 1180 (8th Cir. 2000) .............................................. 5

*Disability Rights Wis. v. Suzanne Pinnow & Town of Thornapple,*
  No. EL 24-85 ....................................................................2, 7

*Gause v. Perkins,*
  56 N.C. (3 Jones Eq.) 177 (1857)......................................... 8

*Graham v. Med. Mut. of Ohio,*
  130 F.3d 293 (7th Cir. 1997)................................................. 8

*McIntyre v. Ohio Elections Comm'n,*
  514 U.S. 334 (1995)...........................................................4, 6

*Wis. Voter Alliance v. Millis,*
  No. 23-C-1416, 2025 WL 357775 (E.D. Wis. Jan. 31, 2025) ................. 2


**Statutes and Constitutional Provisions**

29 U.S.C. § 794.......................................................................... 1

42 U.S.C. §§ 10801, *et. seq.* .................................................. 1

42 U.S.C. § 12101...................................................................... 6

42 U.S.C. § 12131...................................................................... 6

42 U.S.C. § 12132...................................................................... 6

42 U.S.C. § 12133...................................................................... 6

42 U.S.C. § 12134...................................................................... 6

42 U.S.C. §§ 15041, *et. seq.* ...................................................................... 1

52 U.S.C. § 21081 ...............................................................................1, 2

52 U.S.C. § 21112 ..................................................................................... 1

Wis. Const. art. III, § 3 ............................................................................ 5

Wis. Stat. § 5.05 ....................................................................................... 8

Wis. Stat. § 5.06 ....................................................................................... 3

Wis. Stat. § 5.061 ..................................................................................... 2

Wis. Stat. § 5.25 ....................................................................................2, 3

Wis. Stat. § 51.62 ..................................................................................... 1

Wis. Stat. § 227.52 ................................................................................... 3

Wis. Stat. § 227.53 ................................................................................... 3

Wis. Stat. § 893.80 ................................................................................... 7

Wis. Stat. § 905.07 ................................................................................... 5

Wis. Stat. § 995.50 ................................................................................... 7

## Other Authorities

28 C.F.R. §§ 35.101–.190 ........................................................................ 7

Fed. R. App. P. 29(a)(2) ........................................................................... 3

Wis. Elections Comm'n, Barriers *Faced by Elderly Voters and Voters with Disabilities* (June 2023) ............................................................. 8

**STATEMENT OF INTEREST**

Disability Rights Wisconsin (DRW) is a nonpartisan, nonprofit organization organized and located in Wisconsin. DRW is designated by the Governor of the State of Wisconsin to act as the congressionally mandated protection and advocacy agency for Wisconsin citizens with mental illness, developmental disabilities, and other physical impairments, pursuant to Wis. Stat. § 51.62, 29 U.S.C. § 794e, and 42 U.S.C. §§ 15041, *et. seq.*, and §§ 10801, *et. seq*. DRW's mission is to empower all persons with disabilities to exercise and enjoy the full extent of their rights and to pursue the greatest possible quality of life. A primary aspect of this mission is to ensure that persons with disabilities can exercise their constitutional right to vote. DRW's general (as well as principal) interest in this matter arises from its mission and that mission's intersection with Section 301 of the Help America Vote Act (HAVA), 52 U.S.C. § 21081(a)(3).

But DRW's specific interest in this matter arises from a separate matter. Federal law specifically authorizes state-based administrative complaints for violations of HAVA. 52 U.S.C. § 21112. And "Wisconsin's HAVA administrative complaint procedure is set forth in Wis. Stat.

1

§ 5.061." *Wis. Voter Alliance v. Millis,* No. 23-C-1416, 2025 WL 357775, at *2 (E.D. Wis. Jan. 31, 2025). On August 26, 2024, DRW initiated Wisconsin's state-based administrative procedure by filing a complaint under Wis. Stat. § 5.061 with the Wisconsin Elections Commission. *Disability Rights Wis. v. Suzanne Pinnow & Town of Thornapple*, No. EL 24-85, available at https://perma.cc/P8TM-889R. EL 24-85 concerns Thornapple's paper-only voting system, and its failure to provide voters with disabilities appropriate access to the franchise under HAVA, 52 U.S.C. § 21081(a)(3), as well as Wis. Stat. § 5.25(4)(a). *Id.*

WEC issued a final decision letter resolving EL 24-85 on election day. *Disability Rights Wis. v. Pinnow*, Final Decision Letter (Nov. 5, 2024), available at https://perma.cc/C7VG-ANQX. As reflected in that final decision letter, WEC determined that Thornapple violated Wis. Stat. § 5.25(4)(a), the Wisconsin statutory provision implementing HAVA standards for the State of Wisconsin. Among other things, WEC ordered that Thornapple: 1) refrain "from taking any action inconsistent with the analysis in [the WEC] decision"; 2) "conform [its] conduct to the law by providing a HAVA-compliant accessible voting system in all future elections"; and 3) take affirmative steps to comply with Wis. Stat.

§ 5.25(4)(a) and employ accessible electronic voting equipment in Wisconsin elections as described in [the WEC] decision." *Id.* at 1, 8. Thornapple's window to appeal this determination expired without any action by the Town to initiate an appeal. *See* Wis. Stat. §§ 5.06(8), 227.52, 227.53(1)(a)(2m).

With these aforementioned interests at stake, DRW files this brief under Federal Rule of Appellate Procedure 29(a)(2). All parties have consented to this filing.

## ARGUMENT

This Court should affirm the District Court's preliminary injunction. DRW joins the United States' argument in full, and writes separately to apprise the Court of the following:

**Voters with disabilities enjoy the right to a secret ballot under the Wisconsin Constitution. Forcing these voters to forego this right constitutes irreparable harm.**

Thornapple's voting system forces voters with disabilities into an untenable Hobson's choice over preciously guarded, constitutional rights. Either these voters must forgo the franchise altogether or they must abdicate "the secret ballot, the hard-won right to vote one's conscience without fear of retaliation." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995).

In testimony before the District Court, Thornapple's former clerk (Suzanne Pinnow) described the Town's process, under which a voter with a disability relays their voting choices to an election official with the Town, and that official then transcribes the information onto the voter's ballot. (*See* Sept. 24, 2024 Hr'g Tr. 37:3-38:2; Appellant's App. 113-14, 121) DRW does not dispute the testimony from Thornapple's former clerk that she would never discloses these voters' preferences to additional third parties. "I do not blab how people vote." (*Id*. 45:25-46:1) But it

shares the concern, echoed in the District Court's holding, that the incorporation of such assistance into Thornapple's voting system deprives voters with disabilities of the "independence and privacy that HAVA is meant to deliver." (*Id.* 50:14-20) As the District Court recognized, "telling the election official who you are going to vote for is not private." (*Id.* 51:4-9) Accordingly, the District Court appropriately granted the underlying, preliminary injunction, which should be affirmed.

The secret ballot is a hallmark of our shared democracy. "[A]ll 50 States, together with numerous other Western democracies" provide for the secret ballot. *Burson v. Freeman*, 504 U.S. 191, 206 (1992). But ubiquity must not be confused for triviality. "[T]he secret ballot is of paramount importance to our system of voting." *Campaign for Fam. Farms v. Glickman*, 200 F.3d 1180, 1188 (8th Cir. 2000). Relevant here, Wisconsin voters' access to the secret ballot is guaranteed by the state constitution. "All votes shall be by secret ballot." Wis. Const. art. III, § 3. Voting illegally is the lone statutory exception to this right; being a qualified voter with a disability is not. *See* Wis. Stat. § 905.07.

Yet without an accessible (HAVA-compliant) voting machine, Thornapple denies voters with disabilities this state constitutional right. Yet, Thornapple argues that "every single voter with any physical disability whatsoever has been well accommodated and in no way stymied in his or her aspiration to cast a ballot." (Appellant's Br. at 19) Based upon the testimony at the Sept. 24, 2024 hearing, this is wrong. As recognized in *McIntyre*, the secret ballot shields voters from, among other things, the *fear* of retaliation—an antecedent to *actual* retaliation. So, even if every future Town Clerk were certain to uphold Ms. Pinnow's pledge never to divulge a voter's preferences, the mere possibility that they could make such a divulgence, and the fear that possibility creates, already exists and invades the interest guarded by the right to a secret ballot; the harm—far from speculative—is realized.

Other state and federal laws countenance strongly against Thornapple's notion that it has "well accommodated" voters with disabilities. Thornapple is affirmatively obligated under anti-discrimination provisions of the federal code to ensure that voters with disabilities have *equal* access to the voting services available to all voters. 42 U.S.C. § 12101(a)(3); 42 U.S.C. §§ 12131–12134; 28 C.F.R. §§ 35.101–

.190. But under Thornapple's voting system, there is no equality if voters with disabilities are the only ones forced to forgo their right to a private ballot. Moreover, Thornapple's decision to invade the secret ballots of voters with disabilities (rather than pay the few hundred dollars it would cost[1] to deploy its accessible voting machine) likely affords those voters a claim for relief in Wisconsin courts.[2] Those "whose privacy is unreasonably invaded" are entitled to seek[3] equitable relief, compensatory damages, and reasonable attorney fees. Wis. Stat. § 995.50. And it seems fair to presume that it would be unreasonable to invade a voter's ballot when the secrecy of its contents is constitutionally enshrined. Therefore, it is hard to fathom that Thornapple's "accommodation" could be sufficient if, in its provision, the accommodation itself exposed Thornapple to liability in tort under express provisions of the Wisconsin Statutes.

---

[1] The only testimony on the cost of the accessible voting machine came from Thornapple's former clerk, Ms. Pinnow. She explained that, for the machine it already possesses, Thornapple simply needs to program the machine, check for spelling errors, and "make sure everything is running kosher." (Sept. 24, 2024 Hr'g Tr. 41:17-42:6; Appellant's App. 117-18) The total cost to do so is between $500 and $1,000. (*Id.*)

[2] A Wisconsin *agency* already determined that this "accommodation" is illegal. *DRW v. Pinnow*, EL 24-85, Final Decision Letter (Nov. 5, 2024), available at https://perma.cc/C7VG-ANQX.

[3] Through the notice of claim procedure outlined in Wis. Stat. § 893.80.

Secrecy aside, Wisconsin recognizes that deploying accessible voting machines is a necessary element to protect the right to vote for voters with disabilities. The failure to properly set up (let alone, the failure to deploy altogether) an accessible voting machine is understood by WEC—the agency charged with administering Wisconsin's election laws, *see* Wis. Stat. § 5.05(1)—to be a "high severity" accessibility barrier, one that is "likely to prevent a voter with a disability from entering a polling place and casting a ballot privately and independently." Wis. Elections Comm'n, Barriers *Faced by Elderly Voters and Voters with Disabilities* at 8, 13 (June 2023), available at https://perma.cc/Y34P-UUHT. Again, the harm at issue is neither speculative nor diminutive. As WEC identified, it is both likely and significant.

Ultimately, the District Court made the correct judgment: harm to the private ballot and to the right to vote is irreparable. Irreparable harm "cannot be repaired, retrieved, put down again, atoned for," *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) (quoting *Gause v. Perkins,* 56 N.C. (3 Jones Eq.) 177 (1857) (cleaned up)), and is therefore appropriate to be addressed through injunctive relief. Here, the nature of

the harm at stake is the disclosure of private information—for whom[4] a person will vote on election day. A monetary judgment alone could never *completely* remedy such an injury. You cannot put the metaphorical genie back into its bottle. And as described above, this harm is far from tenuous. Indeed, the undisputed testimony from Thornapple's former clerk revealed that this constitutional harm was *certain* to occur under Thornapple's paper-only voting system.

Voters with disabilities enjoy the same rights as all other voters. Thornapple's decision to limit these voters in how they access the franchise compromised those rights. As a result, the preliminary injunction was properly entered by the District Court and should be affirmed.

## CONCLUSION

Voters with disabilities have a right to access the franchise *equally* to all other voters. Thornapple's decision to remove its accessible voting machine limited how voters with disabilities may cast their ballots, and thereby compromised those voters' right to equality at the polls. The preliminary injunction was properly entered by the District Court to

---

[4] And, perhaps, for what, in the case of referenda.

prevent an irreparable harm. The issuance of the preliminary injunction should be affirmed.

Dated February 13, 2025

Respectfully submitted,

s/Jeffrey A. Mandell
Jeffrey A. Mandell, SBN 1100406
Scott B. Thompson, SBN 1098161
Law Forward
222 W. Washington St., Suite 250
Madison, WI 53703
(608) 285-2485
jmandell@lawforward.org
sthompson@lawforward.org

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.  This document complies with the type-volume limit of Cir. R. 29 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 1593 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, Version 16.93 in size 14 font with Century Schoolbook type face style.

Dated February 13, 2025

s/Jeffrey A. Mandell
Jeffrey A. Mandell, SBN 1100406
Scott B. Thompson, SBN 1098161
Law Forward
222 W. Washington St., Suite 250
Madison, WI 53703
(608) 285-2485
jmandell@lawforward.org
sthompson@lawforward.org

# FEDERAL RULE OF APPELLATE PROCEDURE 29(A)(4)(E) STATEMENT.

This brief was not authored in whole or in part by counsel for any party to this appeal.

No money was contributed by any party to this appeal with the intent to fund the preparation or submittal of this brief.

No money was contributed by counsel to any party to this appeal with the intent to fund the preparation or submittal of this brief.

No person–other than the amicus curiae, its members, or its counsel–contributed money that was intended to fund preparing or submitting the brief.

Dated February 13, 2025

s/Jeffrey A. Mandell
Jeffrey A. Mandell, SBN 1100406
Scott B. Thompson, SBN 1098161
Law Forward
222 W. Washington St., Suite 250
Madison, WI 53703
(608) 285-2485
jmandell@lawforward.org
sthompson@lawforward.org
