No. 24-2931

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| TOWN OF THORNAPPLE, WISCONSIN; ANGELA JOHNSON, RALPH C. KENYON, TOM ZELM and JACK ZUPAN, in their official capacities as Town Clerk and Town Board Supervisors of the Town of Thornapple, <br><br> Defendants-Appellants, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellee. | On Appeal from the United States District Court for the Western District of Wisconsin, <br> Case No. 3:24-cv-00664-jdp |

REPLY BRIEF OF DEFENDANTS-APPELLANTS, TOWN OF THORNAPPLE, WISCONSIN; ANGELA JOHNSON, RALPH C. KENYON, TOM ZELM, and JACK ZUPAN

Matthew M. Fernholz
Cramer Multhauf LLP
1601 E Racine Ave
Suite 200
Waukesha, WI 53186
Telephone: (262) 542-4278

Nicholas J. Wanic
America First Policy Institute
1455 Pennsylvania Ave., N.W.
Suite 225
Washington, D.C., 20004
Telephone: (779) 396-0137

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    The Government Has Ignored a Central Cannon of Judicial Interpretation and Fails to Explain How 52 U.S.C. § 21081(b) is not "Irrelevant Surplusage" Under the Government's Own Interpretation of HAVA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    The Government Does Not Adequately Address Congress's Creation of a Specific and Narrow Definition for "Voting System." . . . . . . . . . . . . . 4

        A.  The Technical & Detailed Language of The Statute Does Not Support the Overly Broad Interpretation of The Statute Advanced by the Government.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.  The Government Continues to Ignore Congress's Intent and the Important Historical Context of HAVA's Passage. . . . . . . . . . . . . . 8

    III.   The Government Still Fails to Show How the Record Supports a Finding of Irreparable Harm and Continues to Rely Only on Speculation Unsupported by the Record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Mead Johnson & Co.*,

    971 F.2d 6 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*American Council of Blind of Indiana v. Indiana Election Commission*,

    2022 WL 702257 (S.D. Ind 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Carey v. Wisconsin Elections Commission*,

    624 F.Supp.3d 1020 (W.D. Wis. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Duncan v. Walker*,

    533 U.S. 167 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*,

    414 F.3d 700 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Int'l Assoc. of Fire Fighters, Local 365 v. City of East Chicago*,

    56 F.4th 437 (7th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*King v. Burwell*,

    576 U.S. 473 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Lamie v. U.S. Trustee*,

    540 U.S. 526 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Marbury v. Madison*,

    5 U.S. 137 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Matter of Lifschultz Fast Freight Corp.*,

 163 F.3d 621 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Mays v. Dart*,

 974 F.3d 810 (7th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Merrill v. People First of Alabama*,

 141 S. Ct. 25 (Mem) (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Michigan v. Bay Mills Indian Community*,

 572 U.S. 782 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Microsoft Corp. v. I4I Ltd. Partnership*,

 564 U.S. 91 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Nielsen v. Preap*,

 586 U.S. 392 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Pavelic & LeFlore v. Marvel Entertainment Group, Div. of Cadence Industries Corp.*,

 493 U.S. 120, 126 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Payton v. Walsh*,

 579 F.Supp.3d 1057 (S.D. Ind. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Smith v. United States*,

 508 U.S. 223 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Locke*,

 471 U.S. 84 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Williams v. Taylor*

    529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Statutes**

52 U.S.C. § 21081(b)

    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 8

116 Stat. 1666

    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Other Authorities**

148 Cong. Rec. S10488 (daily ed. Oct. 16, 2002)

    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

148 Cong. Rec. S10490 (daily ed. Oct. 16, 2002)

    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

148 Cong. Rec. S10506 (daily ed. Oct. 16, 2002)

    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

148 Cong. Rec. 136

    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Pub. L. 107-252

    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## SUMMARY OF THE ARGUMENT

The Government cites this Court's precedent and incorrectly conflates its evidentiary burden to demonstrate a likelihood of success on the merits with the standard for the court's analysis in granting preliminary injunctions. The Government cites *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020), for the proposition that it must only "'demonstrate that its claim has some likelihood of success.'" Doc. 12, at 16. While this evidentiary standard may be helpful to ensure that dubious claims that do not have "a better than negligible chance" do not flood our judicial system, the courts are still subject to a higher standard when issuing the extraordinary remedy of injunctive relief. The Government has misapplied a lesser standard. Its case must have "a reasonable likelihood of success on the merits," and not merely "some chance." *See, Int'l Association of Fire Fighters, Local 365 v. City of East Chicago*, 56 F.4th 437, 446 (7th Cir. 2022) (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). Here, the Government has failed to meet its burden.

As the Government points out, the lynchpin to this entire case is one simple question: what is a voting machine? The Government seems to flippantly respond: "what isn't?" Yet, even at the current stage of litigation, the Government is still unable to justify its extraordinarily broad interpretation of HAVA. The Government's approach to statutory interpretation ignores longstanding jurisprudence with respect to the way statutes are to be constructed. The Government has also failed to reconcile its interpretation with the text and history of HAVA. And finally, the Government

continues to rely on speculative injuries, which are contradicted by the record, in order to establish harm. In light of these defects, the district court's order granting a preliminary injunction must be reversed.

## ARGUMENT

**I. The Government Has Ignored a Central Cannon of Judicial Interpretation and Fails to Explain How 52 U.S.C. § 21081(b) is not "Irrelevant Surplusage" Under the Government's Own Interpretation of HAVA.**

The parties appear to be in agreement that courts cannot interpret statutes in a way that renders language in a statutory scheme irrelevant. As the Government has pointed out, courts should be "reluctan[t] to interpret a statutory provision so as to render superfluous other provisions in the same enactment." Doc. 12, at 19 (quoting *Matter of Lifschultz Fast Freight Corp.*, 163 F.3d 621, 628 (7th Cir. 1995)). Indeed, the Supreme Court has pronounced a preference for an "interpretation [which] gives effect 'to every clause and word of a statute.'" *Microsoft Corp. v. I4I Ltd. Partnership*, 564 U.S. 91, 106 (2011) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Yet, the Government still advances an interpretation of HAVA at odds with this cannon of judicial interpretation.

At this point in the litigation process, the parties need not advance more arguments about the use of the word "and." However, it should be reiterated that the difference between disjunctive and conjunctive meanings is the difference between whether HAVA applies against every conceivable voting process and operation. This difference is not semantic. Under the Government's construction of the statute, one struggles to imagine any conceivable system that would not fall under HAVA. The

2

district court concluded similarly with regard to the scope of the Government's interpretation. Tr. Hrg. at 49:22-25; App. 125 ("HAVA just applies to whatever voting system a municipality uses . . . It applies, and everybody has to comply with it."). Assuming, *inter alia*, Congress intended HAVA's accessibility provisions to apply to every method of voting in every place in this country, it would defy logic to presume Congress could not write a statute that clearly did so. Instead, Congress carefully crafted a statute with multiple subsections and paragraphs to define a what is and *is not* a "voting machine."

To adopt the Government's interpretation of the statute would be to render recitation of the various parts of 52 U.S.C. § 21081(b) a mere intellectual exercise, with no practical effect on HAVA's scope. If anything can be a "voting machine" then discussions of "mechanical, electromechanical, or electronic equipment" are irrelevant. Courts are to interpret statutes such that every word and provision in a statute should be given effect, and none should be interpreted in a way that renders them redundant or meaningless. *Nielsen v. Preap,* 586 U.S. 392, 414 (2019). Courts prefer interpretations that give independent legal effect to every word and clause in a statute. *Williams v. Taylor,* 529 U.S. 362, 404 (2000). Here a voting process must satisfy *all* of the listed criteria under 52 U.S.C. § 21081(b) in order for HAVA to apply. That is the only interpretation that gives meaning to every portion of the statute. Accordingly, Appellants respectfully request that this court decline to determine that "pencils or pens" are mechanical, electromechanical, or electronic voting equipment.

## II. The Government Does Not Adequately Address Congress's Creation of a Specific and Narrow Definition for "Voting System."

Congress purposefully did not include paper ballots—or any other analogue voting methods—in the statutory definition of a "voting system." This omission reflects a deliberate legislative choice, grounded in Congress's constitutional duty and expertise in enacting laws, as underscored in *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004). Despite this clear intent, the Department of Justice has overlooked the significance of Congress's decision. In accordance with the deference established in *Lamie*, the statute should not be interpreted to apply to the paper ballots and voting procedures used by the Town of Thornapple.

### A. The Technical & Detailed Language of The Statute Does Not Support the Overly Broad Interpretation of The Statute Advanced by the Government.

The Government has not adequately demonstrated how a statute as narrow as HAVA, with its use of technical language, can logically be interpreted to regulate effectively all federal elections, regardless of the voting method used. The sole logical justification offered by the Government, buried on the twentieth page of its briefing, is that it is the position of the United States of America that anything can be a mechanical device. Doc. 12, 20-21 (". . . given that voters must use pencils or pens—mechanical instruments—to vote, and then they place their ballots in a box with a lock—another mechanical device.").

This all-encompassing interpretation of "voting machine" that would incorporate every single last animal, vegetable, mineral, or man-made creation ever devised on this earth is a bridge too far. However, even less believable is the

4

insinuation that Congress would need one-hundred and seventeen words about mechanical, electromechanical, or electronic equipment including software, firmware, and documentation required to program, control, and support equipment, in order to describe a humble pencil. The courts owe deference "to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill." *Lamie*, 540 U.S. at 526 (quoting *United States v. Locke*, 471 U.S. 84, 95 (1985)). That deference here is to the carefully and specifically curated definition of "voting system." The courts simply cannot extrapolate meaning, even from the Government's mischaracterized accounting of legislative intent. It is Congress's responsibility to design laws with care and it is not the judiciary's role to judge the quality of the legislative process or to correct perceived flaws in the statutory machinery. *King v. Burwell*, 576 U.S. 473, 515 (2015) (Scalia, J. dissenting).

This Court should not presume to 'save' HAVA by creating a broader scope than exists in the text, as the Government requests. It is beyond the Court's province to rescue Congress from its drafting errors, should they exist, and to provide for what it might think, perhaps along with some members of the government, is the preferred result. *See Smith v. United States*, 508 U.S. 223, 247, n.4 (1993) (Scalia, J., dissenting) ("Stretching language in order to write a more effective statute than Congress devised is not an exercise we should indulge in"); *Pavelic & LeFlore v. Marvel Entertainment Group, Div. of Cadence Industries Corp.*, 493 U.S. 120, 126 (1989) ("Our task is to apply the text, not to improve upon it"); *United States v. Locke*, 471 U.S. 84, 95 (1985) ("[T]he fact that Congress might have acted with greater clarity or foresight does not

give courts a *carte blanche* to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do."); *Michigan v. Bay Millis Indian Community*, 572 U.S. 782, 789 (2014) (The Courts "ha[ve] no roving license . . . to disregard clear language simply on the view that . . . Congress 'must have intended' something broader.". The courts hold only "the power to pronounce the law as Congress has enacted it." *King v. Burwell*, 576 U.S. 473, 515 (Scalia, J., dissenting) (2015); *Marbury v. Madison*, 5 U.S. 137 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.")

The Government also complains that it would not make sense for Congress "to leave a gaping hole in coverage." Doc. 12, at 26. Appellants agree, because Congress left no such hole. The laws of the United States offer ample protections for disabled voters in need of accommodation, protections which were already in existence when HAVA was passed. Denying voters with disabilities reasonable accommodations for voting already constitutes unlawful discrimination under the Americans with Disabilities Act. *See, American Council of Blind of Indiana v. Indiana Election Commission*, 2022 WL 702257, at *8 (S.D. Ind. Mar. 9, 2022) (citing *Merrill v. People First of Alabama*, 141 S. Ct. 25 (Mem) (2020) (Sotomayor, J., dissenting). Additionally, the Voting Rights Act prevents states from enforcing laws that place restrictions on assistance available to disabled voters, ensuring that they are able to exercise their right to vote. *See Carey v. Wisconsin Elections Commission*, 624 F.Supp.3d 1020 (W.D. Wis. 2022). Notably, both the ADA and Voting Rights Act are much broader in scope than HAVA. Accordingly, any interpretation which requires

6

application of HAVA in every circumstance requires the court to interpret both the ADA and the Voting Rights Act as not applicable to disabled Americans who attempt to vote in our elections. Such a conclusion is repugnant to civil liberties protected by the 15th Amendment and enshrined in those momentous pieces of civil rights legislation.

Congress never intended to preempt the States from relying on paper ballots in federal elections. The Government cites the Wisconsin Elections Commission's official position that municipalities "are generally entitled to opt out of using voting machines," Doc. 12 at 9; however, under the Government's broad construction of the statute this is an illusory option. The Government's position preempts any meaningful regulation of elections by requiring application of HAVA in every circumstance. The Congressional record and the historical context of HAVA's passage—not to mention the ordinary plain meaning of the statutory text—clearly show that HAVA was a targeted remedy to address a specific, albeit large, problem. It was not intended as a nationwide catchall to usurp any local or state authority related to decisions on how to conduct elections.

Even applying the Government's linguistic approach, however, a physical paper ballot itself does not become a "voting system" or a component thereof under 52 U.S.C. § 21081(b). Accordingly, the Government has failed to establish the merit of its case as to the applicability of HAVA to the Town of Thornapple's elections.

## B. The Government Continues to Ignore Congress's Intent and the Important Historical Context of HAVA's Passage.

The Government has failed to demonstrate that Congress intended to regulate all elections processes, and not just those that are "mechanical, electromechanical, or electronic." The Government concedes that "HAVA was undoubtedly concerned with correcting the problems with the 2000 election." Doc. 12, at 30. In support of its position that "the legislative history underscores the correctness of the United States' interpretation of the statute," *id.*, the Government offers only three trivial points, each of which suffers from the same contextual defect.

The Government argues that the statute's preamble establishing "minimum election administration standards for States and units of local Government," is evidence of Congress's intent that paper ballots counted by hand are not exempt "from the statute's carefully crafted requirements." *Id.* at 27, 30 (citing 166 Stat. 1666). Notably, this portion of the preamble comes last, and after an opening clause establishing "a program to provide funds to States to replace punch card voting systems,"—punch cards being an example of a "mechanical" "voting system" under the definition in § 21081(b)—as the primary goal of the legislation. Pub. L. 107-252, 116 Stat. 1666.

The Government does not address the circumstances surrounding the attachment of the "minimum election administration standards" to HAVA as an amendment, separate from the purpose of the overarching legislation. This distinction is important because Appellants have never argued the merit of section 301. Instead, they argue that HAVA is inapplicable in its entirety, based on the

8

limited scope of what constitutes a "voting system" under the Act. It is also an important distinction because the only evidence in the Congressional Record offered by the Government is in the form of two statements explicitly supporting and articulating the purpose of Section 301 only. *See* Doc. 12, at 30-31 (citing 148 Cong. Rec. S10488, S10490, S10506 (daily ed. Oct. 16, 2002)). These statements are not only irrelevant to the debate over the scope of what constitutes a "voting system," but as Appellants have already pointed out, one of these statements was made by a Senator who clarified that the "mechanical, electromechanical, or electronic" voting systems that concerned lawmakers were "hanging chads [and] butterfly ballots." App. Br. at 15 (quoting 148 Cong. Rec. 136 (S10514)).

The Government has failed to address the legislative history of HAVA in its entirety, and by cherry-picking quotes related only to a single section of the bill—a section separate from the statutory definition at the core of this case—the Government has failed to explain how HAVA establishes "minimum election administration standards" that grant HAVA *cart blanche* over every federal election, regardless of the voting process used by the states and local governments.

III. **The Government Still Fails to Show How the Record Supports a Finding of Irreparable Harm and Continues to Rely Only on Speculation Unsupported by the Record.**

The Government argues that Appellants do not dispute "that Thornapple's failure to make an accessible ballot marking device available infringes on the right HAVA guarantees to individuals with disabilities to vote privately and independently. Doc. 12, at 32 (citing App. 126-127). The Government

9

mischaracterizes the record and Appellants' position. Appellants do not argue that under HAVA, *if* it applies, they would be required to utilize the electronic voting machine provided to them. Instead, they argue that under their current voting procedures, in effect subsequent to the June 2023 decision and until the injunction of the court below, there was no evidence in the record of irreparable harm. The infringement of a fundamental right may constitute an irreparable injury, but the courts must still ensure that the party seeking relief meets its burden. "Speculative injuries do not justify the extraordinary remedy of injunctive relief." *Payton v. Walsh*, 579 F. Supp. 3d 1057, 1062 (S.D. Ind. 2022) (quoting *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005)). There is no legal basis to lower this burden of proof simply because the moving party claims an injury to a fundamental right.

The Government argues that evidence in the record shows that voters' rights were conditioned on compromising their ability to vote privately and independently. Doc. 12, at 33. The Government points to two anecdotes from the testimony of Ms. Pinnow. *Id.* (citing App. 112-113). Contrary to the Government's assertion, neither of these instances demonstrate that voters in Thornapple were forced into choosing to exercise their rights in a manner that was neither private nor independent. The mere fact that assistance was provided is not dispositive. In fact, the ADA already acknowledges that reasonable accommodation, including assistance from third parties, is a necessary part of ensuring that disabled voters are not disenfranchised. *Cf., American Council of Blind of Indiana*, 2022 WL 702257, at *8 (citing *Merrill*, 141

S. Ct. 25 (Mem) (2020) (Sotomayor, J., dissenting). In contrast, the record does show that even when voters were presented with the opportunity to use the voting machines previously used by Thornapple, they chose not to. App. 114; Tr. Hrg. 38:12-16. Nothing in the record demonstrates that an unwilling voter was directly forced to cast a ballot without privacy and independence, as a result of Thornapple's voting process. Even if the Government were correct in asserting that it need only establish "likely harm," Doc. 12, at 34 (quotations omitted)—a point Appellants do not concede in the instant case—the likelihood of that harm cannot be supported by the type of speculation relied upon by the Government in seeking its injunction. Even less so in the face of actual evidence to the contrary. There is simply no basis in the law for the Government to assert potential harm as a basis for an injunction, when the speculative nature of that harm is contradicted by the record. A holding to the contrary in the instant case would give the Government a blank check to obtain injunctive relief based solely on indirect evidence by simply invoking a fundamental right in future cases.

Because the Government relies on theoretical, speculative harm and does not give due weight to the actual evidence to the contrary, it has failed to establish the likelihood of irreparable harm absent injunctive relief.

## CONCLUSION

Because the Government has still failed to reconcile its interpretation of "voting system" under HAVA, has still failed to address the narrow language in the statute, has still failed to reconcile its interpretation with the broader legislative

history of HAVA, and has still failed to locate actual evidence of harm—free of speculation—in the record, the Government has ultimately failed to meet its burden to show a reasonable likelihood of success on the merits. Accordingly, the preliminary injunction below was improvidently granted, and this Court should reverse and remand.

Dated this 28th day of February, 2025.

s/ Matthew M. Fernholz                    s/ Nicholas J. Wanic

_____              _____

Matthew M. Fernholz                       Nicholas J. Wanic
Cramer Multhauf LLP                       America First Policy Institute
1601 E Racine Ave                         1455 Pennsylvania Ave., N.W.
Suite 200                                 Suite 225
Waukesha, WI 53186                        Washington, D.C., 20004
Telephone: (262) 542-4278                 Telephone: (779) 396-0137

*Counsel for the Appellants*              *Counsel for the Appellants*

CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT

The undersigned counsel hereby certifies, under penalty of perjury, that:

1. This document complies with the word limit of Cir. R. 32(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 3,020 words; and

2. This document complies with the typeface requirements of Cir. R. 32(b) because this document has been prepared in Microsoft Word in a proportionally spaced typeface using Century Schoolbook in 12 pt. regular font for the body.

Dated this 28th day of February, 2025.

s/ Matthew M. Fernholz                           s/ Nicholas J. Wanic

_____                    _____

Matthew M. Fernholz                              Nicholas J. Wanic
Cramer Multhauf LLP                              America First Policy Institute
1601 E Racine Ave                                1455 Pennsylvania Ave., N.W.
Suite 200                                        Suite 225
Waukesha, WI 53186                               Washington, D.C., 20004
Telephone: (262) 542-4278                        Telephone: (779) 396-0137

*Counsel for the Appellants*                     *Counsel for the Appellants*

☑ **CERTIFICATE OF SERVICE**
**Certificate of Service When All Case Participants Are CM/ECF Participants**

I hereby certify that on ___February 28, 2025___, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/___Nicholas J. Wanic_____

☐ **CERTIFICATE OF SERVICE**
**Certificate of Service When Not All Case Participants Are CM/ECF Participants**

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

| counsel / party: | address: |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

s/_____